IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
SOUTHERN DIVISION

GREENBELT VENTURES, LLC,
                            Plaintiff,

    v.

WASHINGTON METROPOLITAN AREA
TRANSIT AUTHORITY

                            Defendant.

Action No. 08:10–CV–157—AW

## MEMORANDUM OPINION

Pending before the Court is Defendant Washington Metropolitan Area Transit Authority's Motion for Reconsideration (Doc No. 30); Defendant's Motion to Amend/Correct Scheduling Order (Doc. No. 31); Defendant's Motion for Protective Order (Doc. No. 50); Defendant's Motion to Strike (Doc. No. 55); Defendant's Motion to Quash Subpoena 4 (Doc. No. 58); and Plaintiff Greenbelt Ventures' Motion to Strike (Doc. No. 67). The Court held a hearing in this matter on Thursday, May 5, 2011. For the reasons stated herein, the Court **GRANTS** Defendant's Motion to Reconsider, **DENIES** Defendant's Motion to Strike, and **DENIES** all other pending motions as **MOOT**.

### I. Factual and Procedural Background

Plaintiff filed its Complaint on January 1, 2010. On February 16, 2010, Defendant filed its Motion to Dismiss Plaintiff's Complaint. The Court ruled on this Motion on September 1, 2010, issuing a Memorandum Opinion and Order which dismissed all of Plaintiff's claims except its claim for breach of contract. The Court allowed the breach of contract claim to prevail on the grounds that "Plaintiff has sufficiently pled facts to establish exceptions to Defendant's Statute of Frauds defense to survive the Motion to Dismiss." (Doc. Nos. 23, at 18). On September 14,

2010, Defendant filed a Motion for Reconsideration on the Court's September 1, 2010 Order, requesting that the Court reconsider its decision to deny the Plaintiff's Motion to Dismiss the breach of contract claim from this matter. The facts relevant to the pending Motion for Reconsideration are briefly recounted below.

Defendant, Washington Metropolitan Area Transit Authority ("WMATA"), is charged with the construction and operation of the transit system for the Washington, D.C., metropolitan area and was created by an Interstate Compact ("Compact") between the state of Maryland, the Commonwealth of Virginia, and the District of Columbia. WMATA leases and sells real property that is located at or adjacent to the Metrorail stations that it owns to developers who are interested in creating "transit-oriented development projects" in an effort to "increase transit ridership and provide revenue to help offset the cost of operating transit systems." (Doc. No. 18, 4.) WMATA's Board of Directors has adopted guidelines to assist WMATA staff in its joint development program, originally entitled the Procurement Procedures Manual ("PPM") and later revised in 2008 as the Joint Development Policies and Guidelines ("JDPG"). Under both versions of the guidelines, the Board of Directors, and not the General Manager or WMATA staff, is responsible for, inter alia, approving the developer selected for a particular Metrorail development project and the terms of contracts with the designated developer. (Doc. No. 18, Ex. 1, 5.); *see also* (Doc. No. 21, Ex. 1.)

WMATA issued a Request for Proposals to develop its property surrounding the Greenbelt Metrorail Station in Greenbelt, Maryland, ("Greenbelt Project") on March 22, 1996. Metroland Developers, LLC ("Metroland"), who was originally a plaintiff in this matter but requested termination from the case, submitted a proposal and the Board approved Metroland as the selected developer for the Greenbelt Project. After approving Metroland as the developer,

the Board approved "a detail term sheet containing [the] terms and conditions for development" of the Greenbelt Project on January 27, 2000, which authorized WMATA staff to execute a Joint Development Agreement ("JDA"). WMATA and Metroland entered into the JDA on December 21, 2000, which contained the terms and conditions for the development of a "mixed-use, transit-oriented development project consisting" of "residential property," "retail property," "office property," and a "Hotel/Conference Center." (Doc. No. 18, 6.) The JDA also required Metroland to replace the parking lot owned by WMATA. The closing of the sale was contingent on Metroland satisfying a number of conditions including: preparation and submission of a site plan to appropriate governmental entities, initiation of legislative efforts to obtain funding from the Maryland Consolidated Capital Transportation Program for the design and construction of an interchange from the Capital Beltway to the Project area, obtaining all approvals necessary for the project including zoning and land use, and designing WMATA's new parking lot. The original term for meeting these pre-closing conditions as allocated in the JDA was five (5) years, with the opportunity to extend the term for an additional year, up to five times, for a maximum of ten (10) years. Without approval from the Board, WMATA and Metroland amended the JDA on October 10, 2002, and provided for an initial term of six (6) years, and then four (4) one-year extension periods, for a total extended term of ten (10) years. Metroland sought and WMATA gave approval for the annual extensions, and Metroland affiliate, Metropark, and later Greenbelt Ventures, LLC, ("Greenbelt Ventures"), the remaining Plaintiff in this matter, made extension payments on Metroland's behalf.

In late 2005, Greenbelt Ventures and Metroland entered into a preliminary agreement for Greenbelt Ventures to purchase a controlling interest in Metroland. Greenbelt Ventures alleges that WMATA was fully aware that it had assisted Metroland in obtaining many of the milestones

required under the JDA because of its intended acquisition of Metroland. Under the JDA, Metroland was not permitted to assign the Greenbelt Project contract without WMATA's prior written approval, and the JDA provides that "approval shall not be unreasonably withheld." (First Am. Compl. Ex. A, at § 20.02.) The JDA also states that "in the event that consent or approval is sought but not granted, such a denial shall be accompanied by a statement of the reasons for the denial within fifteen (15) days after such consent or approval is initially requested." (*Id.* at § 21.07.) On March 23, 2006, Greenbelt Ventures submitted its written request for approval of its acquisition of a controlling interest in Metroland and assignment of the Greenbelt Project contract. Greenbelt Ventures contends that from 2006-2008, WMATA orally represented on several occasions that it had already approved the change in ownership of Metroland and that it would provide written approval of Greenbelt Ventures as the developer for the Greenbelt Project. In reliance on these representations, Greenbelt Ventures asserts that it expended time, effort, and financing to continue with the development plans. Moreover, on July 19, 2006, Metroland and Greenbelt Ventures entered into a Membership Interests Purchase and Sale Agreement ("Membership Purchase Agreement") in which the existing Metroland members would retain a 10% interest, Prudential would obtain a 50% interest, and Greenbelt Ventures would obtain a 40% membership interest in Metroland.

WMATA denies making such representations, and in any event, asserts that it never provided written approval of the change to Greenbelt Ventures as the developer for the Greenbelt Project pursuant to its contract with Metroland, which Greenbelt Ventures understood was a condition to assignment of the Project. Instead, on September 1, 2006, Greenbelt Ventures alleges that Elisa Hill, a WMATA staff member, informed Greenbelt Ventures that WMATA had not given written approval and that written approval would be conditioned upon the Board's

approval of an amended JDA.  According to Greenbelt Ventures, as of September 18, 2006, WMATA requested an increase in the purchase price of the property before it would grant approval of the assignment.  Greenbelt Ventures asserts that it made the 2006 extension payment of $76,753.25, and continued to act as the developer for the Project.  However, from February 2007 until April 2008, Greenbelt Ventures protested WMATA's unreasonable withholding of approval of the assignment and its new conditions for approval to various officials in WMATA and eventually to Maryland's Lieutenant Governor.  Accordingly, WMATA began negotiating the terms of a proposed amended JDA ("Restated JDA") with both Metroland and Greenbelt Ventures.  WMATA argues that all parties had full knowledge that the Board would have to approve the proposed assignment.  The parties agreed to a Restated JDA in June 2008, and the Restated JDA was placed on the Board's agenda for consideration at its July 24, 2008, meeting; however, Greenbelt Ventures requested that the proposal be withdrawn and placed on the agenda for the Board's September 25, 2008, meeting. Meanwhile, a September 15, 2008, *Washington Post* article surfaced, which indicated that the FBI was investigating a former Prince George's County Council member concerning his improper involvement on legislation connected with the Greenbelt Project.  Pointing to the negative publicity on the Greenbelt Project, WMATA's Board decided to remove the proposed amended JDA from the September 25, 2008, Board meeting agenda, and has not since sought to place the proposal back on its agenda for consideration despite Greenbelt Ventures requests.

    Greenbelt Ventures and Metroland originally brought suit in the Circuit Court of Maryland for Prince George's County, Maryland, to contest WMATA's purportedly unreasonable withholding of approval for the assignment of the JDA from Metroland to Greenbelt Ventures.  However, Greenbelt Ventures alleges that after filing litigation, Metroland

informed it that Metroland had secretly been meeting with WMATA and the FBI to discuss the potential use of WMATA property located at the Greenbelt Metrorail Station for the relocation of the FBI facilities. Greenbelt Ventures contends that Metroland withdrew from the litigation because of the potential risk that the litigation posed to Metroland's negotiations with WMATA and the FBI. In addition, Metroland sent Greenbelt Ventures a letter terminating the Membership Purchase Agreement, which Greenbelt Ventures disputes whether the letter effectively terminates their contract. WMATA removed the case to this Court on January 21, 2010, on diversity of citizenship grounds.[1] In its Complaint, Greenbelt Ventures asserted claims against WMATA for breach of contract, fraud, breach of fiduciary duty, tortious interference with contract, interference with prospective advantage, promissory estoppel, and unjust enrichment. Defendant filed a Motion to Dismiss Plaintiff's First Amended Complaint on February 16, 2010 (Doc. No. 18). In the Court's Memorandum Opinion and corresponding Order dated September 1, 2010, the Court granted the Defendant's Motion to Dismiss all claims except Plaintiff's breach of contract claim (Doc. Nos. 23, 24). Defendant requests that the Court reconsider this decision and dismiss Plaintiff's breach of contract claim.

## II. STANDARD OF REVIEW

In the Fourth Circuit, a Court can amend an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Hutchinson v. Stanton*, 994 F.2d 1076, 1081 (4th Cir. 2002). Reconsideration is, however, an extraordinary remedy. *Pac. Ins. Co. v. Am.. Nat'l Fire Ins. Co.,* 148 F.3d 396, 403 (4th Cir. 1998).

---

[1] Metroland was originally a Plaintiff when this action was filed in state court; however, Metroland and Greenbelt Ventures stipulated to dismissal before WMATA removed the case to this Court. The case caption has been changed to Greenbelt Ventures LLC v. Washington Metropolitan Area Transit Authority to reflect the current parties in the case.

## III.    ANALYSIS

WMATA requests that the Court reconsider its decision on Defendant's Motion to Dismiss, alleging that the Court erred in applying equitable exceptions to the Statute of Frauds in light of WMATA's sovereign immunity.   Plaintiff contends that the instant motion for reconsideration does not fit within any of the outlined reasons for filing a motion for reconsideration, alleging that the arguments asserted in the instant motion should have been raised in the original motion to dismiss.  Defendant responds to this argument by asserting that the Court should reconsider its decision to correct a clear error of law or prevent a manifest injustice.   Addressing Plaintiff's argument that Defendant is asserting new arguments that were not raised in its original motion to dismiss, WMATA concedes that "immunity was not previously discussed in connection with the Statute of Frauds defenses . . ." (Doc. 30-1, at 8). However, WMATA argues that sovereign immunity can be asserted at any time.

The court recognizes that "'[a] litigant generally may raise a court's lack of subject-matter jurisdiction at any time in the same civil action[.] Because the Court lacks subject matter jurisdiction over claims against the State barred by sovereign immunity, [the Defendant] may assert this new legal argument on motion for reconsideration." *Paulone v. City of Frederick*, WDQ-09-2007, WL 3000989 (D. Md. Jul. 26, 2010) (internal citations and quotations omitted). Therefore, the Court agrees that Defendant has the right to assert the argument that he is propounding in its Motion for Reconsideration, as the Defendant's assertion of sovereign immunity can be raised at any time.

Defendant alleges that the Court's finding that WMATA "conceded in its reply brief that it is not entitled to sovereign immunity as to the Plaintiff's breach of contract claim" was a misinterpretation of WMATA's position that "sovereign immunity was 'limited' with respect to

GV's contract claim." (Doc. No. 46, at 4).  WMATA argues that they "did not concede that sovereign immunity is waived as to claims founded upon quasi-contract principles, whether as a separate claim or as a bar to the Statute of Frauds." *Id.*  According to Defendant, Section 80 of the WMATA Compact "provides a limited waiver of sovereign immunity, to allow WMATA to be sued for 'its contracts.'"  *Id.* at 5.  Defendant requests that the Court dismiss the breach of contract claim on the basis that the Statute of Frauds bars the existence of any purported oral contract between Greenbelt Ventures and WMATA.  Moreover, Defendant maintains that Plaintiff "has not demonstrated that WMATA has waived its sovereign immunity with respect to the exceptions to the Statute of Frauds." *Id.*

### 1. Application of the Statute of Frauds

In the hearing on the Motion for Reconsideration, Plaintiff directed this Court to *Della Rata v. Broadneck Development Corp.*, 410 A.2d 32 (Md. Ct. Spec. App. 1980) to support its argument that the Statute of Frauds does not apply to this case.[2]  Defendant contends that "[c]ontracts that may remotely or indirectly relate to land but that do not fall within the express terms of the Statute of Frauds are not controlled by Section 5-104.  Such agreements are not contracts 'for the sale or disposition of land' or of any interest 'in or concerning' land." (Doc. No. 53, at 7).

In *Della Ratta,* the Court asserted that "[i]t has been repeatedly held in different jurisdictions that an agreement by two or more persons to buy land and sell it and share either the profits or the profits and losses constitutes them partners for that venture and entitles either of them to an accounting in equity from the others of the joint transactions. . . . A verbal agreement

---

[2] The Court notes that Plaintiff first presented this argument in its response to Defendant's Motion for Protective Order. (Doc. No. 53).  However, the Court will consider Plaintiff's argument.

is sufficient to constitute a partnership to deal in lands, the Statute of Frauds not being applicable to such a contract." 44 Md.App. at 513.

*Della Rata*'s holding that an agreement to buy or sell land between joint ventureres falls outside of the Statute of Frauds is inapposite to the case at bar. In *Della Rata*, the agreement at issue was directly between two joint venturers. Unlike in *Della Ratta,* the contested agreement at issue in this case is not an agreement to buy or sell land or to share in the profits of this land. The agreement at issue is a purported agreement between Greenbelt Ventures and WMATA to approve the assignment of the Greenbelt Project contract from Metroland to Greenbelt Ventures. An agreement to buy or sell land or to share in the profits of this land may have existed between Metroland and WMATA, but such an agreement certainly did not exist between Greenbelt Ventures and WMATA. Accordingly, the Court does not find *Della Rata*'s holding persuasive in this matter.

**2. Part performance and Equitable Estoppel as Bars to Statute of Frauds**

During the hearing on the Motion for Reconsideration, Plaintiff asserted that the doctrine of part performance takes this case outside of the application of the Statute of Frauds. The Court recognizes that part performance, under certain circumstances, can operate as an exception to the Statute of Frauds and hence, can be used to estop the Defendant from asserting Statute of Frauds as a defense. *See Harrington v. M.C. Fuhrman & Assocs., LLC*, Civ. No. WDQ-10-1258, 2011 WL 90234 (D. Md. Jan. 10, 2011)("Maryland recognizes part performance as an exception to the Statute of Frauds. Part performance may be used to estop a defendant from asserting the Statute of Frauds as a defense 'when the performance clearly indicates the existence of the oral contract.'")(quoting *Cambell v. Indymac Bank*, 2010 WL 419387, at *2) (D. Md. Jan. 29, 2010) (internal citations omitted)); *see also Plana v. Shoresales, LLC*, JFM-03-1227, 2003 WL

21805290 (D. Md. Jul. 14, 2003) (asserting "[w]e note that part performance is not a substitute for the writing required by the Statute but rather, it may be viewed as a means to estop the defendant from asserting the Statute as a defense."); *Coastwise Petroleum Co. v. Standard Oil Co. of New Jersey*, 19 A.2d 180, 182 (Md. 1941). Like part performance, promissory estoppel can operate to estop a party from asserting the Statute of Frauds as a defense, provided that the Plaintiff satisfies certain elements.

However, the Court must assess Plaintiff's assertions of part performance and equitable estoppel in light of Defendant's assertion of sovereign immunity. Defendant argues that Plaintiff cannot estop the government from arguing Statute of Frauds as a defense through Plaintiff's part performance and equitable estoppel arguments. Therefore, the Court must determine if these estoppel doctrines can be asserted in light of Defendant's sovereign immunity.

### 3. Sovereign Immunity as a Defense to the Statute of Frauds Exceptions

In the Court's Memorandum Opinion, it found that Plaintiff had adequately pled exceptions to the Defendant's Statute of Frauds defense based on equitable estoppel and part performance. As a preliminary matter, the Court recognizes the Maryland Court of Special Appeals holding stating, ". . . the State is bound by its contracts only by virtue of its waiver of sovereign immunity. It is a bedrock principle of sovereign immunity that, '[i]f the State chooses, by legislative action, to waive its sovereign immunity, [the courts] strictly construe[ ] the waiver in favor of the State.'" *Maryland Transp. Authority Police Lodge No. 34 of Fraternal Order of Police, Inc. v. Maryland Transp. Authority*, 5 A.3d 1174, 1229 (Md. Ct. Spec. App. 2010). It is well known that a waiver of sovereign immunity must be clear and unequivocal. Moreover, a waiver is strictly construed. *See Kingston Constructors, Inc. v. WMATA,* 860 F.Supp. 886, 888-

89 (D.D.C. 1994) ("Waivers must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires.").

Plaintiff asserts that contrary to Defendant's argument, "the express terms of the WMATA Compact incorporate both the Statute of Frauds and the appellate decisional law interpreting and applying it, including the case law relating to the exceptions of 'part performance' and 'estoppel.'" (Doc. No. 53, at 13). Therefore, according to Plaintiff, "[t]here is simply no basis for WMATA to invoke the Statute of Frauds as a defense to GV's claim without acknowledging that it is liable for its contracts 'in accordance with' the substantive statutory and decisional law of Maryland." (Doc No. 56, at 11-12). However, this Court does not agree. In *Martin v. Washington Metropolitan Area Transit Authority*, 273 F.Supp.2d 114, 119 (D.D.C. 2003), the United States District Court for the District of Columbia dismissed the plaintiff's promissory estoppel claim against WMATA on the grounds that WMATA's compact did not waive immunity with respect to promissory estoppel claims. ("Section 80's waiver only denotes WMATA's liability for its contracts and torts occurring in the performance of a non-governmental function; it does not mention promissory estoppel, which is a distinct legal theory."). This Court finds that as WMATA has not explicitly waived its immunity as to quasi-contract claims, WMATA is entitled to assert its sovereign immunity defense as to Plaintiff's Statute of Frauds claim.

Plaintiff encourages this Court to deny Defendant's Motion for Reconsideration on the basis that part performance and equitable estoppel constitute exceptions to the Defendant's Statute of Fraud defense. As the Court has previously noted, "[u]nder certain circumstances, a court may use the plaintiff's part performance of an oral contract as a means of estopping the defendant from asserting the Statute of Frauds as a defense to enforceability." *Campbell v.*

*Indymac Bank*, No. CCB-09-3182, FSB 2010 WL 419387 at *2. Additionally, the Court recognizes that "[a]n examination of [Maryland cases] shows that . . . part performance or part payment, which has long been recognized in this State as an estoppel to deny an oral contract." *Coastwise Petroleum Co. v. Standard Oil Co. of New Jersey*, 179 Md. 337, 341 (1941). However, in the instant motion, Defendant directs the Court to Fourth Circuit precedent holding that "equitable estoppel against the government is strongly disfavored, if not outright disallowed . . . ." *Volvo Trucks of N. Am., Inc. v. United States*, 367 F.3d 204, 211 (4th Cir. 2004). Defendant also directs the Court to *Office* of *Pers. Mgmt. v. Richmond*, 496 U.S. 414, 422-23 (1990), a case cited in Defendant's Motion to Dismiss, where the Court stated that "we have reversed every finding of estoppel [against the government] that we have reviewed."

As Defendant correctly asserts, equitable estoppel is only available where a government agent engages in "affirmative and egregious misconduct" that goes beyond "mere unprofessional and misleading conduct." *Kone v. Ashcroft*, No. PJM 04-1996, 2004 U.S. Dist. LEXIS 28462 at *7 (D. Md. Nov. 16, 2004). As the Ninth Circuit highlighted in *U.S. v. Ruby Co.*. 588 F.2d 697, 703 (9th Cir. 1978), "since estoppel is an equitable doctrine, it should be applied 'where justice and fair play require it.' As applied to the government, it requires a balancing test. On the one side, the court must weigh the tendency of 'the government's wrongful conduct . . . to work a serious injustice . . . .' Against this consideration, the court must balance the countervailing interest of the public "not (to) be unduly damaged by the imposition of estoppel." (internal citations omitted). As further support for the proscription against applying estoppel against the government, in *Maryland Transportation Authority,* the Maryland Court of Special Appeals specified that they "recognized the caveat in *ARA Health Services*, and other cases that, 'ordinarily' equitable estoppel cannot be asserted against the state. Accordingly, it may be that

an extraordinary case presenting particularly compelling equitable grounds would give rise to equitable estoppel against the State. However we are unaware of any Maryland case so holding. . . ." 195 Md. App. 124, 218.

In response to Defendant's Motion for Reconsideration, Plaintiff does not contend with Defendant's assertion that Section 80 waives WMATA's sovereign immunity as to executed contracts exclusively. Instead, Plaintiff alleges that the cases that Defendant relies on to support its arguments "do not support WMATA's contentions that any court has ever held that exceptions to a Statute of Frauds defense are subject to the analysis that WMATA suggests." (Doc No. 37, at 10). The Court does not agree.

In *Office of Personnel Management v. Richmond*, 496 U.S. 414, 423 (1990), the petitioner encouraged the court to promulgate "a flat rule that estoppel may not in any circumstances run against the Government." Declining to reach the merits of the estoppel argument, the Court found that it could decide the case on "a narrower ground" than the estoppel argument that the government was asserting, and "[left] for another day whether an estoppel claim could ever succeed against the Government." *Id.* However, in *Richmond*, the Court did not reject the Solicitor General's argument that equitable estoppel barred the respondent's claim against the government, instead finding a narrower ground on which to decide the case—the Appropriations Clause.

Plaintiff correctly asserts that the Fourth Circuit in *Dawkins w. Witt*, 318 F.3d 606 (4th Cir.) did not discuss sovereign immunity in their discussion of whether the plaintiffs in that case could argue that FEMA was equitably estopped from raising the defense that the plaintiffs failed to provide prove of loss within the requisite time period. However, while there was no explicit discussion of sovereign immunity in *Dawson*, the Court can reasonably assume that the Fourth

Circuit's discussion of the limited application of estoppel arguments to government entities was based on sovereign immunity grounds. Even without this assumption, the Fourth Circuit's discussion of the application of estoppel to the government is certainly relevant to the issue at bar. Hence, *Dawson's* conclusion that "estoppel may only be justified, if ever, in the presence of affirmative misconduct by government agents" is compelling. *Id.* at 612.

Having reviewed the Amended Complaint in light of the Defendant's argument in its Motion to Reconsider, the Court finds that Plaintiff has not adequately pled that Defendant has engaged in any "affirmative and egregious misconduct" sufficient to estop WMATA from raising the Statute of Frauds defense by asserting equitable exceptions to the Statute of Frauds. As the Court ruled in its Memorandum Opinion on the Motion to Dismiss, "WMATA's decision of whether to approve the assignment of the Greenbelt Project contract to Greenbelt ventures is a discretionary, not ministerial, act." (Doc. No. 23, at 11). As the approval of the assignment was discretionary, there was never any guarantee that WMATA would grant approval. Accordingly, the Court cannot find that the Plaintiff's claim that WMATA unreasonably withheld approval of the assignment constitutes conduct that rises to the level of affirmative or egregious misconduct. Arguably, while Plaintiff may have offered facts to demonstrate that Defendant's conduct was deceptive, there is certainly no affirmative misconduct that has been alleged.

In light of the clear authority disfavoring estoppel claims against the government and the failure of the Plaintiff to allege any affirmative and egregious misconduct on behalf of the government, Plaintiff is barred from estopping the WMATA from raising its Statute of Frauds Defense. The Court will now assess WMATA's affirmative defense of Statute of Frauds to Plaintiff's breach of contract claim.

### 4. Statute of Frauds as an Affirmative Defense

In the Court's Memorandum Opinion on Defendant's Motion to Dismiss, it declined to dismiss Plaintiff's Breach of Contract claim on the grounds that "Plaintiff [had] sufficiently pled facts to establish exceptions to Defendant's Statute of Frauds defense to survive the Motion to Dismiss." (Doc. No. 23, at 18). In the preceding discussion, the Court concluded that Plaintiff is not entitled to estop WMATA from raising Statute of Frauds as a defense. "Affirmative defenses, such as the statute of frauds, may be raised in a Rule 12(b)(6) motion to dismiss, but 'for dismissal to be allowed on the basis of an affirmative defense, the facts establishing the defense must be clear on the face of the plaintiff's pleadings.'" *Harrington,* 2011 WL 90234 (citing *Blackstone Realty, LLC v. FDIC,* 244 F.3d 193, 197 (1st Cir.2001). Therefore, the Court finds it necessary to review WMATA's Statute of Frauds defense at this juncture.

In their Motion for Reconsideration, Defendant highlights that no direct contractual relationship exists between Greenbelt Ventures and WMATA, triggering the application of the Statute of Frauds to Plaintiff's Breach of Contract claim. (Doc. No. 30-1, at 4) ("Greenbelt Ventures has not even alleged that it and WMATA executed or entered into the Restated JDA, so there are no grounds for finding that the Restated JDA evidences a direct contractual relationship between Greenbelt Ventures and WMATA.") (internal citations omitted).

Under Maryland law, "[t]he Statute of Frauds requires that, for a contract for the sale of land to be enforceable, there must be a writing signed by the party or its agent. Pursuant to Maryland Code (2003 Repl.Vol.), § 5–104 of the Real Property Article." *Royal Inv. Group, LLC v. Wang*, 961 A.2d 665, 681 - 682 (Md. Ct. Spec. App. 2008). The *Royal Investment Group* Court went on to highlight that "[t]o render a contract enforceable under the statute of frauds, the required memorandum must" meet the following criteria:

(1) a writing (formal or informal);

(2) signed by the party to be charged or by his agent;

(3) naming each party to the contract with sufficient definiteness to identify him or his agent;

(4) describing the land or other property to which the contract relates; and

(5) setting forth the terms and conditions of all the promises constituting the contract made between the parties.

*Id.*

From the factual allegations made in the Amended Complaint, it is clear to the Court that no writing exists in this case which evidences a contract between Greenbelt Ventures and WMATA. Consequently, Plaintiff has failed to state sufficient facts to overcome Defendant's Statute of Frauds defense. Accordingly, the Court **GRANTS** Defendant's Motion for Reconsideration on Plaintiff's Breach of Contract Claim and **DISMISSES** this claim from the Amended Complaint.

### 5. Remaining Motions

#### a. Defendant's Motion to Amend Scheduling Order

The grant of Defendant's Motion for Reconsideration moots Defendant's Motion to Amend the Scheduling Order in this case. Accordingly, this Motion is **DENIED as MOOT.**

#### b. Defendant's Motion for Protective Order

Defendant has filed a Motion for a Protective Order (Doc. No. 50), requesting that this Court stay discovery pending resolution of Defendant's Motion for Reconsideration. As the Court has granted Defendant's Motion for Reconsideration, Defendant's Motion for Protective Order is **DENIED as MOOT.**

#### c. Motion to Strike

Defendant moves to Strike "all substantive arguments regarding the application of the Statute of Frauds in the Points and Authorities in Support of Plaintiff's Opposition to Defendant's Motion for Protective Order, including but not limited to Sections III. A and C in their entirety, because such arguments are an impermissible surreply to WMATA's Motion to Reconsider." (Doc No. 55, at 1). Defendant contends that "Plaintiff argues for the first time that the alleged contract is not subject to the Statute of Frauds and in Section III.C., Plaintiff expands on its prior argument that sovereign immunity does not preclude Plaintiff from raising promissory estoppel and part performance as defenses to the Statute of Frauds." *Id.* While the Court is aware of this district's Local Rule requiring leave of Court before parties are permitted to file surreply memoranda, for the sake of fully allowing the parties to assert its position with respect to the somewhat novel issue before the Court, this Court will permit the plaintiff to assert the arguments made in its opposition to Defendant's Motion for Protective Order. As such, the Court will **DENY** Defendant's Motion to Strike.

  d. **Motion to Quash**

Defendant moves to quash four of Plaintiff's subpoenas and notices of deposition duces tecum on the grounds that "WMATA's assertion of immunity has not been fully resolved in this action." (Doc. 58, at 1). The Court's decision on Defendant's Motion for Reconsideration moots this Motion. Therefore, Defendant's Motion to Quash is **DENIED as MOOT.**

  e. **Plaintiff's Motion to Strike Notice of Filing and Exhibits**

Plaintiff moves to strike Defendant's Notice of Filing and accompanying exhibits, which Defendant filed on May 2, 2011. According to Plaintiff, "Defendant apparently intends to submit the Notice in support of its position in the pending Motion to Reconsider." (Doc. No. 67-

1, at 2). For the sake of fully briefing the issues before the Court, the Court will decline to strike Plaintiff's Notice of Filing. Accordingly, Defendant's Motion to Strike is **DENIED**.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Reconsideration is **GRANTED** (Doc. No. 30); Defendant's Motion to Amend/Correct Scheduling Order is **DENIED AS MOOT** (Doc. No. 31); Defendant's Motion for Protective Order (Doc. No. 50) is **DENIED AS MOOT**; Defendant's Motion to Strike (Doc No. 44) is **DENIED**; Defendant's Motion to Quash Subpoenas is **DENIED AS MOOT** (Doc. No. 58); Plaintiff's Motion to Strike is **DENIED** (Doc. No 67). An Order consistent with this Memorandum Opinion will follow.

Date:  June 1, 2011                                  _____/s/_____
                                                     Alexander Williams, Jr.
                                                     United States District Court